IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| LORENZO RICHARDSON, #1236095 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv87 |
| WARDEN OLIVER, ET AL. | § | |

<u>MEMORANDUM OPINION AND
ORDER OF DISMISSAL</u>

Plaintiff Lorenzo Richardson, an inmate confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on May 15, 2009. After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on August 4, 2009. A *Spears* hearing is a proceeding which allows a litigant to offer sworn testimony in support of his allegations. The Fifth Circuit has stated that a *Spears* hearing is appropriate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. It serves to implement the congressional intent of meaningful access to court for indigent litigants, and also to allow the district court to winnow out the wheat from the unusual amount of chaff necessarily

1

presented in a system which fosters *pro se* litigation. *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (*citing Watson v. Ault*, 525 F.2d 886, 890 (5th Cir. 1975). Regional Grievance Coordinator Ginger Lively and Assistant Warden Eddie Baker attended the hearing in order to answer any questions the Court had concerning prison policy or information contained in the Plaintiff's records.

The Plaintiff stated that he witnessed six or more inmates assault inmate McGregor in the I-Line dayroom of the Eastham Unit on or about October 16, 2008. All of the inmates that were in the dayroom were called out and interviewed, except for the Plaintiff. On the following night, inmates were speculating as to why the Plaintiff was not interviewed. The inmates came to the conclusion that he was not called out because he was a "snitch" or informant. During breakfast on October 18, 2008, two inmates informed him that the attack group had labeled him a snitch and would attack him just like they had attacked inmate McGregor. The Plaintiff testified that he was new to the Eastham Unit. He did not know any of these people. He testified that most of the inmates assigned to the area were gang members, while he was not a gang member.

The Plaintiff told Lt. Phillips that he feared for his safety. Lt. Phillips placed him in a transit cell for safety precautions, and a life endangerment study ("LID") was conducted. He was kept in transit until October 23, 2008. He was then taken before Warden Oliver. He informed Warden Oliver about his situation and need for protection. He asked to be transferred to another unit. Warden Oliver told him that he saw merits to his claim, but he did not believe that the Plaintiff was in much danger. Warden Oliver thus issued instructions to release him back into the general population. The Plaintiff also testified that Warden Oliver said there was insufficient evidence to support his claim.

The Plaintiff informed Lt. Crane about his situation. Lt. Crane had the Plaintiff placed back in transit. Another LID was conducted. The Plaintiff went before Warden Oliver a second time on October 27, 2008. Warden Oliver was angry with the Plaintiff and stated, "You didn't even try did you?" The Plaintiff replied, "What was he supposed to do - be assaulted or killed?" Warden Oliver had Officer Lackey remove the Plaintiff from his office and released back to the general population.

The Plaintiff told Officer Lackey that he wanted to fill out a LID form against Warden Oliver. Officer Lackey told him that he would get a second shift sergeant to talk to him, but the sergeant never came. After shift change, he told Officer Ramon that he wanted to see the sergeant. Officer Ramon told him he would get the sergeant, but the sergeant never came. Instead, Officer Ramon filed disciplinary charges against the Plaintiff for failing to obey an order to move to another cell in Case Number 20090058718. The Plaintiff testified that he did not refuse to obey an order. He alleged that the disciplinary charges were fabricated. Officer Ramon never asked him whether he would move to another cell, although he admitted that he would not have gone back to the general population. He added that he has never gone back to the general population and that he is confined in segregation for loss of privileges associated with refusing to accept a housing change. He testified that he has been confined in a cell by himself, but the cell is designed for two people. He fears that someone who will harm him will be assigned to the cell. The Plaintiff testified that he does not leave the cell because he fears for his safety. He reiterated his desire to be moved to another unit.

The Plaintiff testified that Counsel Substitute Phillips was assigned to represent him in the disciplinary hearing. He complained that she did not honor his requests to obtain various documents for his defense, such as LID documents. Captain English presided over the disciplinary hearing. When the Plaintiff renewed his request that documents be produced for his defense, Captain English

3

removed from the hearing for being disruptive. The Plaintiff was found guilty. He testified that this was just one of several disciplinary cases he has received for failing to move. His punishment in these cases included a loss of good time. None of his cases have been overturned. He testified that he is not eligible for release on mandatory supervision. He added that he has not fought the disciplinary cases. He explained that he would be lying if he claimed that he had not refused to move because he will not move to another cell. Nonetheless, he does not believe that the disciplinary cases were appropriate since his life was in danger at the Eastham Unit.

The Plaintiff testified that he sued Mrs. Oliver because she failed to assist him gather evidence for an appeal. She claimed that he refused to review the hearing tape. He denied the claim. He added that he never refused to go to any hearing until the fabricated disciplinary case was filed against him by Officer Ramon. He told Mrs. Oliver that he would not go to a subsequent hearing, thus it was recorded that he refused to review the disciplinary hearing tape.

The Plaintiff also complained that he was denied access to court. Lt. Spurlock refused to send him a Black's Law Dictionary and a Legal Directory. On January 6, 2009, Lt. Spurlock told him that the books were not allowed or available to administrative segregation inmates. He admitted that he would have been able to look at these books if he had gone to the law library, but he was not able to go there due to loss of privileges. The Plaintiff noted that he submitted a request for law library materials on October 18, 2008, which was not filled until October 23, 2008. He noted that he received only half of the pages. All of the even-numbered pages were missing. He submitted a request for three cases and the definitions of six words on December 24, 2008. He did not receive a response until January 2, 2009. He received only part of his requests. He noted that he submitted a request to see the Civil Practice and Remedies Code ("CP&R") on October 18, 2008. The request

4

was honored. He made the same request on January 15, 2009, which was denied by Officer Prater. Lt. Spurlock later told him he needed to provide the full citation - not just a reference to CP&R.

The Plaintiff testified that he wanted to conduct legal research in order to file this lawsuit and a state claim in a Justice of the Peace court in Crockett. He wanted to file the case in Crockett because $72 worth of commissary goods were confiscated. He submitted letters to the court in Crockett, but he never received a response. He also submitted letters to the Fifth Circuit, but once again he did not receive a response. On January 16, 2009, he submitted a request for an inmate clerk to help him fill out state and federal petitions. On January 27, 2009, Lt. Spurlock responded by stating that the duties of the clerks did not include help with filling out forms.

The Plaintiff was asked how he was harmed by the denial of access to court. He testified that he was not harmed; instead, he wanted to study issues before he filed any lawsuits. He did not want to file any frivolous lawsuits. He needed to study the law in order to avoid filing frivolous lawsuits.

The Plaintiff also sued Ms. Morgan and Ms. Baskins in the mail room. He explained that he made inquiries to the mail room as to when his letters were logged since he did not receive responses. He received the response that the letters were not in the current log. He noted that the logs go back only a limited amount of time, perhaps thirty days. The responses indicated that his letters were not in the current log. They did not investigate whether his letters were logged in previous logs. He filed grievances, and his requests were finally answered, although he never received an exact date as to when his letters were logged.

The Plaintiff testified that he sued Mr. Hicks, the grievance coordinator, because his grievances were thrown away. His grievances against the mail room, the law library and Warden Oliver just vanished. His grievance against Counsel Substitute Phillips likewise just vanished. They

5

were never answered. He filed additional grievances to document the loss of his previous unanswered grievances. The grievances were returned for procedural reasons, such as the failure to timely file his grievances. He characterized the failure to honor his request for the CP&R and the loss of his grievances as retaliation and harassment for filing grievances. The Plaintiff testified that he believes that he experienced these problems because he filed the LID against Warden Oliver.

The Plaintiff gave the Court permission to review his prison records. Regional Grievance Coordinator Lively testified that the Plaintiff had exhausted his administrative remedies. She brought certified authenticated copies of his grievance and classification records. His LID records were included in the classification records. The LID records were particularly informative. Sgt. J. Peterson began the first investigation on October 18, 2009. He provided the following summary:

> On 10-18-08 at approximately 0330 offender Richardson, Lorenzo, #1236095, came to the Lt's office claiming his life was in danger stemming from supposedly telling administration about tattoo and tobacco on I-Line. Offender claims someone has told him that he is next. I then asked him who supposedly threatened him[, and] he would wouldn't say. I then place the offender Richardson in D-2-5. On 10-19-08 I talked to 3 different offenders at random. I talked to Offender Crachian, Marcus #592412 from I-1-15B and he stated he hasn't heard of anybody threatening offender Richardson or even pertaining to him. I then talked to Anderson Trent #638667 from I-1-9B and claimed he didn't know anything and didn't want to sign a statement. I then talked to Davila, Frank #1438968 from I-Line 2-6B a known Tango and on his statement he doesn't even know who he is.

A Unit Classification Committee hearing was conducted on October 23, 2008, with Warden Oliver presiding. A recommendation was made to keep the Plaintiff at his current status. The justification for the decision was that there was no evidence to substantiate the claim.

Another LID was conducted was begun on October 23 and completed on the following day. Sgt. Clark issued the following findings:

> Summary of Subsequent Offender Interview: Offender Richardson, Lorenzo #1236095, B/M, 50 Y/O, G4, serving 20 yrs for Agg. Robb., requested a life endangerment investigation on 10.23.2008 at approx. 17:30. After interviewing the offender and reviewing his classification folder, the claim the offender is making that unknown offenders are "after

him" is repetitious of the last OPI filed. Offender Richardson added that two offenders told him he was next to get "clicked on" but refused or would not identify them.

The offender shows evidence of paranoia and has been referred to the psych. dept. for evaluation. I am attaching this cover sheet to a copy of his previous OPI and forwarding it to the EA Unit UCC for further review.

A recommendation was made to keep the Plaintiff at his current status with no action at that time due to no new evidence. A third investigation was conducted after the Plaintiff refused to move into the general population on October 27, 2008. Sgt. Clark found that the claims were repetitious and that there was no new evidence. A recommendation was made to keep the Plaintiff at his current status. Majors signed off on both recommendations made by Sgt. Clark. Warden Oliver also approved the latter recommendation on October 27, 2008.

The disciplinary records show that the Plaintiff had many disciplinary cases for refusing to accept a housing assignment both before and after the incident that occurred on October 16, 2008. He received three disciplinary cases for refusing to accept a housing assignment in September, 2008. With respect to Disciplinary Case Number 20090058718, Officer Raymond (as opposed to Ramon) filled out an Offense Report on October 28, 2008. He noted that the Plaintiff refused to accept the housing assignment to J-1-2B cell. The Plaintiff explained that he was not able to go out to the general population. The service investigation worksheet noted the Plaintiff's fear for his safety. Counsel Substitute Phillips noted in her investigation that two LID investigations had been conducted and that the Plaintiff wanted the LID records at the hearing. The hearing work sheet confirmed that the Plaintiff was excluded from the hearing. The reason provided for the exclusion was lack of cooperation with the Disciplinary Hearing Officer and Counsel Substitute. Officer Raymond testified that he ordered the Plaintiff to move, and the Plaintiff told him that he would not move because he feared for his safety. Officer Raymond noted that a classification hearing was

7

conducted earlier in the day and that Warden Oliver said that his life was not in danger. Captain English found the Plaintiff guilty based on Officer Raymond's report and testimony. The punishment imposed included the loss of commissary and property privileges for 30 days, special cell restrictions for 30 days, solitary confinement for 10 days, loss of 90 days good time and remain at line class 3.

Grievance records reveal that the Plaintiff filed a Step 1 grievance about the loss of his property on September 18, 2008, in Grievance Number 2009011339. On October 14, 2008, Warden Oliver filed a response specifying that his claim was investigated, that they were unable to establish that the loss of property was the fault of prison personnel and that the Plaintiff had signed a slip saying that he had received all of his property. The Plaintiff submitted a Step 2 grievance asking for the return of his $72. The response was that there was insufficient evidence that staff was responsible for the alleged loss of his property.

The Plaintiff filed a grievance against Mr. Prater and Lt. Spurlock for not providing him law library materials on November 12, 2008, in Grievance Number 2009048125. Warden Reescano responded by stating that all legal books are repaired before they are issued and that records reveal that he received requested books on October 23, 2008; October 29, 2008; and October 31, 2008. The grievance was denied. V. Barrow, the Assistant Program Administrator for Access to Courts, denied his Step 2 grievance with the explanation that all legal research materials had been processed properly. Another Step 1 grievance involving allegations of denial of access to law library materials was denied on January 21, 2009, by Warden Reescano in Grievance Number 2009075513.

On December 16, 2008, the Plaintiff filed a Step 1 grievance about being denied access to court. On December 19, 2008, the grievance was returned since the grievable time period had expired.

On November 21, 2008, the Plaintiff filed an appeal of Disciplinary Case Number 20090058718, in Grievance Number 2009049753. He made many of the same complaints that are found in the present lawsuit. Warden Oliver denied the grievance on December 9, 2008. He found that the evidence was sufficient to support the finding of guilt and the penalty imposed. He noted that there were no significant due process or apparent procedural errors to warrant overturning the case. The Step 2 grievance was denied on January 27, 2009.

On December 16, 2008, the Plaintiff filed a Step 1 grievance alleging that his life was in danger. He alleged that Warden Oliver was deliberately trying to subject him to a substantial risk to his safety. He asked to be shipped to another unit. On December 19, 2008, the grievance was returned since the grievable time period had expired.

The Plaintiff filed a Step 1 grievance against Mr. Hicks for failing to file eleven grievance between October 25, 2008 and January 5, 2009, Grievance Number 2009086593. Warden Oliver filed a response on February 9, 2009. He noted that Mr. Hicks specified that all grievances are collected daily Monday through Friday and are processed according to policy. He further noted that Ms. Spurlock responds to law library requests according to policy. He finally stated that Mailroom Supervisor Morgan advised that legal mail is logged when received and processed daily. Warden Oliver concluded that the Plaintiff was not being denied access to courts. The response to the Step 2 grievance was that no further action was warranted.

On February 10, 2009, the Plaintiff filed a Step 1 grievance against Warden Oliver for retaliation and harassment with the explanation that Warden Oliver had full knowledge that his life is in danger. He did not want Warden Oliver answering any more of his grievances. On February 11, 2009, the grievance was returned because the Plaintiff had submitted more than one grievance in a seven day period.

9

Warden Oliver denied another grievance about the Plaintiff not receiving all of his legal materials on March 6, 2009, in Grievance Number 2009106304. The Step 2 grievance was denied on April 27, 2009.

## Discussion and Analysis

The Plaintiff testified that his primary claim was that his life was in danger and that Warden Oliver did not take steps to protect him. He further testified that his remaining claims grew out of his failure to protect claim. The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995).

In the present case, the Plaintiff testified that his life endangerment claims were investigated. He then went before the Unit Classification Committee headed by Warden Oliver. Warden Oliver concluded that there was insufficient evidence to support his claim that his life was in danger, thus

10

Warden Oliver issued instructions to release the Plaintiff back into the general population. The LID records provide additional information on this matter. Sgt. Peterson conducted the LID investigation and documented his findings. The Plaintiff was unable to identify anyone who had threatened him. Furthermore, Sgt. Peterson spoke to three inmates at random and was unable to uncover any threat to the Plaintiff. Subsequent investigations were conducted when the Plaintiff again alleged that his life was in danger, but there was no new evidence to support the claim. Overall, the Plaintiff's testimony, along with the LID records, reveal that prison officials were responsive to the Plaintiff's claims. They were not deliberately indifferent. The Plaintiff does not have a basis for a potentially meritorious deliberate indifference to his safety claim against Warden Oliver simply because he disagrees with the finding that there was insufficient evidence that his life was in danger.

The Plaintiff also filed civil rights claims against Officer Ramon a.k.a. Officer Raymond and Officer Lackey because they did not comply with his demand to bring a supervisory official, such as a sergeant, to talk to him when he refused to move to another cell because he feared for his safety. The record shows, however, that his fears were, in fact, brought to the attention of a sergeant and that Sergeant Clark prepared a subsequent LID report. The fact that the Plaintiff's life endangerment claims were brought to the attention of Sgt. Clark reveal that the officers were responsive to his claims and were not deliberately indifferent to his safety. Overall, the failure to protect claims fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The failure to protect claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about Disciplinary Case Number 20090058718. He asserted that he did not refuse to obey an order about a housing change since he was never ordered to move to another cell. He admitted that he would have refused if he was ordered to move, but he never

received the order. His punishment included the loss of good time, and he acknowledged that he is not eligible for release on mandatory supervision. Because the Plaintiff seeks damages in this case, he cannot bring a civil rights actions about this disciplinary case or any other disciplinary case unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). A civil rights lawsuit is not the appropriate method of challenging the disciplinary cases. The appropriate method of initially challenging prison disciplinary cases in federal court is by filing a petition for a writ of habeas corpus. In this case, however, the Plaintiff would be unsuccessful in pursuing habeas corpus relief because he is ineligible for release on mandatory supervision. *See Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000). The Plaintiff does not have a basis for a civil rights lawsuit against Officer Ramon a.k.a. Officer Raymond, Counsel Substitute Phillips and Captain English concerning the disciplinary case. His civil rights claims about the disciplinary cases fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. His claims about the disciplinary cases should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's claims against Counsel Substitute Phillips should be dismissed for the additional reason that he may not bring a civil rights lawsuit against a counsel substitute. Defense attorneys may not be liable in a civil rights lawsuit. *See Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir. 1983). A counsel substitute in a prison disciplinary proceeding has the same purpose as a defense attorney in a criminal case and thus cannot be sued in a civil rights lawsuit. *Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995).

The Plaintiff also alleged that he was denied access to court. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828. The Texas prison system provides both attorneys and law libraries. The parameters of the prison system's access to court plan has been defined in conjunction with the *Ruiz* litigation.

On the other hand, an inmate's right of access to court is not absolute. The Supreme Court recently noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). Prison officials may place reasonable limits on the right. *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). Restrictions may be imposed for security reasons. *See Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *overruled on other grounds, Thornburg v. Abbott*, 490 U.S. 401 (1989).

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *See also Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). He must identify the nonfrivolous, arguable underlying claim. *Id.* There is no constitutional violation when a prisoner has time to reprepare and file his legal document in a court despite impediments caused by officials. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991).

In the present case, the Plaintiff has been able to present the present civil rights lawsuit. He has not shown harm. He admitted that he could not show harm. The fact that he may have had problems receiving legal materials from Lt. Spurlock and Officer Prater does not, standing alone, provide a basis for a potentially meritorious civil rights lawsuit. As was noted in *Lewis v. Casey*, civil rights claims for denial of access to court must concern attacks to an inmate's sentence or the conditions of his confinement. Denial of access to court claims do not encompass other types of lawsuits, such as property claims in Justice of the Peace courts. Nonetheless, the dispositive issue in this case is the lack of harm. The Plaintiff admitted that he could not show harm. The denial of access to court claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The denial of access to court claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also made vague claims about retaliation and harassment. Verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). Retaliation, on the other hand, is a potential claim, but the legal definition of a retaliation claim is somewhat limited. To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must

be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 127 S.Ct. 596 (2006). In *Morris*, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

With respect to the first element that a plaintiff must show that he was the victim of retaliation in response for engaging in constitutionally protected activities, the Fifth Circuit has placed limits on the scope of potentially meritorious claims:

> . . . [N]either any frivolous filings nor secondary litigation activity . . . may comprise the basis of a retaliation claim. Conversely, a parole panel's consideration of such unprotected activity in denying a prisoner parole does not infringe that prisoner's constitutional right of access to court. . . . In concluding that the prisoners' constitutional right of access to the courts had been violated, the magistrate judge plainly considered, and proceeded throughout on the assumption, that *any and all* prisoner writ writing or litigation activity was constitutionally protected. At no point did he ever distinguish between frivolous filings and secondary activity on the one hand and protected filings of at least arguable merit on the other.

*Johnson v. Rodriguez*, 110 F.3d at 311. Frivolous filings and secondary activities, such as legal research and writing for another inmate as a writ writer, may not comprise the basis of a retaliation claim. *Id.* Consequently, a plaintiff will not have a basis for a potentially meritorious retaliation claim when his underlying complaint, grievance or lawsuit is frivolous.

In the present case, the Plaintiff characterized a number of acts as retaliation and harassment. In one of his grievances, he alleged that Warden Oliver was engaging in retaliation and harassment by failing to transfer him when he had full knowledge that his life was in danger. The Plaintiff does not have a basis for a retaliation claim against Warden Oliver merely because Warden Oliver did not agree with his life endangerment claims and refused to recommend him for a transfer to another unit. The Plaintiff also couched his retaliation claim against Warden Oliver in terms of being a response

16

to him filing another LID claim after Warden Oliver rejected his first LID claim. Neither frivolous filings nor secondary litigation activity may form the basis of a retaliation claim. The Plaintiff's subsequent activity regarding Warden Oliver's findings was not protected activity and may not form the basis of a retaliation claim. Moreover, the retaliation claims must be dismissed for the additional reason that they are speculative. The Plaintiff has not alleged any facts showing that anyone had a retaliatory motive for engaging in any activities. The harassment and retaliation claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **24** day of **August, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE